UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIE JOANNA WILSON,

          Plaintiff,

     v.

DOUG QUINN AND APRIL QUINN,
Jointly and Severally,

          Defendants.

ECF CASE

No.: 1:21-cv-4846 (MKV)

FIRST AMENDED COMPLAINT

JURY TRIAL DEMANDED

NATURE OF THE ACTION

1.     Defendants Doug Quinn (owner and chef of Hudson Malone, a restaurant and bar with locations in Manhattan, New York and Westport, Connecticut) and his wife, Defendant April Quinn (Managing Director at R/GA) employed Plaintiff Maria Joanna Wilson from 2004 to September 21, 2020 as their children's nanny.

2.     Plaintiff asserts the following claims against Defendants: unpaid overtime under the Fair Labor Standards Act and New York Labor Law; recordkeeping violations under the Labor Law.

JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. § 216(b).

4.     Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(b)(2): Defendants are residents of this District; and a substantial part of the events giving rise to the action occurred in this District.

5.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

6.    Plaintiff was, at all relevant times, an adult individual, residing in Queens, New York.

7.    Defendant Doug Quinn is an individual who resides at 233 E 69th Street, New York, New York 10021.

8.    Defendant April Quinn is an individual who resides at 233 E 69th Street, New York, New York 10021.

## STATEMENT OF FACTS

Duties and Hours[1]

9.    Defendants Doug and April Quinn, a husband and wife, employed Plaintiff as the nanny for their four children.

10.    Defendant Doug Quinn is the owner and chef of Hudson Malone, a restaurant and bar with locations in Manhattan, New York and Westport, Connecticut.

11.    Defendant April Quinn is a Managing Director at R/GA, an international innovation consultancy headquartered in New York City, with more than a dozen offices worldwide.

12.    Defendants decided Plaintiff's compensation structure, hours worked and had the authority to and did hire and fire her.

13.    Plaintiff's duties included caring for Defendants' children, bathing the children, cleaning the children, feeding the children, playing with the children, cleaning up

---

[1] The headers are only for organizational purposes.

after the children (e.g., cleaning up their toys, putting away their belongings, etc.), changing diapers when children were young, carrying around children, cooking, doing laundry, unloading deliveries (e.g., groceries, diapers, etc.), running errands (e.g., picking up laundry, dropping off laundry, etc.), getting groceries, taking out the trash, washing dishes, taking children to and from daycare or school and to their activities and lessons during the day, and cleaning Defendants' house.

14.     Plaintiff treated Defendants' children as they were her own.

15.     From 2014 to September 4, 2018, Plaintiff had a fixed 52.5-hour weekly schedule: Monday to Friday, 8:30 a.m. to 7:00 p.m.

16.     In additional to her fixed schedule, at least one day a week, when Defendant April Quinn went out to social events, Plaintiff worked late watching the children until at least 8:00 p.m. or as late as 12:00 a.m., raising her total hours worked per week by an average of 2.5 hours and equaling to 55 hours per week.

17.     From 2013 to 2016, due to certain domestic issues at Defendants' residence, Plaintiff sometimes worked late into the night or the early morning, without any additional compensation.

18.     Due to Defendants' domestic issues, from 2015 to 2016, Plaintiff estimates that she worked until midnight or as late as 3:00 a.m., at least three days a week, 13 weeks per year, resulting in her working as many as 70 hours in those weeks.

19.     From February 20, 2016 to early March 2016, Plaintiff took two weeks off of work due to having had a surgery. Defendants did not pay Plaintiff during her medical leave.

20.    From September 4, 2018 to March 12, 2020, Plaintiff's fixed schedule changed when two of Defendants' younger children went to school.

21.    From September 4, 2018 to March 12, 2020, Plaintiff worked Monday to Friday, starting her shift either at 8:30 a.m. and working until 7:00 p.m. or starting at 12:00 p.m. and working until 7:00 p.m., working an average of 8.75 hours per day and 43.75 hours per week.

22.    From March 12, 2020 to September 21, 2020, due to the COVID-19 pandemic, Plaintiff was told not to come to the apartment but that she must be on standby and ready to work when they need her.

23.    On September 21, 2020, Defendants terminated Plaintiff's employment telling her that it is because they temporarily relocated to Connecticut.

24.    During her employment, Plaintiff did not have an uninterrupted 30-minute meal break and usually ate on her feet or when she fed Defendants' children.

25.    Defendants had no policy or practice to track the hours Plaintiff worked.

26.    Plaintiff was given one week of unpaid vacation a year.

27.    When Defendants took vacation, one to three weeks per year, they paid Plaintiff to be available and ready to work.

28.    In 2015 and 2017, Plaintiff worked 55 plus hours per week at least 50 weeks per each year.

29.    In 2016, Plaintiff worked 55 plus hours per week at least 48 weeks per year.

30.    From January 1, 2018 to September 4, 2018, Plaintiff worked 55 plus hours per week for at least 30 weeks during this period.

31.     From September 4, 2018 to December 31, 2018, Plaintiff worked an average of at least 43.75 hours per week for at least 16 weeks during this period.

32.     In 2019, Plaintiff worked an average of at least 43.75 hours per week at least 45 weeks per year.

33.     From January 1, 2020 to March 12, 2020, Plaintiff worked an average of at least 43.75 hours per week at least 10 weeks during this time period.

Compensation

34.     Defendants paid Plaintiff a weekly salary, regardless of the number of hours that she worked per week.

35.     Up until September 2018, Defendants paid Plaintiff $1,000 per week.

36.     From September 2018 to March 12, 2020, Defendants paid Plaintiff $800 per week.

37.     Plaintiff asked Defendants to make her an official employee several times, but they refused and insisted on paying her cash.

38.     Defendants did not take withholdings or deductions from the weekly payment.

39.     Defendants paid Plaintiff the same compensation regardless of how many hours she worked.

40.     Defendants did not pay Plaintiff overtime premium pay for any hour she worked over 40 in a week.

41.     Defendants misclassified Plaintiff as exempt from overtime.

42.    No complete or accurate written agreement exists between Defendants and Plaintiff detailing her compensation structure, including her hourly rate, overtime rate and work schedule.

43.    Defendants never told Plaintiff that her weekly salary includes overtime premium pay for the hours she worked over 40.

44.    No mutual understanding existed between Plaintiff and Defendants that the weekly salary payments were to compensate her for her overtime premium pay.

45.    Defendants, upon information and belief, took no proactive steps to learn whether they were lawfully compensating Plaintiff.

46.    Defendant Doug Quinn's restaurant Hud-Moe LLC d/b/a Hudson Malone and he were sued on February 14, 2018 for failing to pay an employee overtime: *Luis A. Angamarca v. Hud-Moe LLC d/b/a Hudson Malone and Douglas Quinn*, 1:18-cv-1334 (S.D.N.Y.).

47.    Despite being sued for failing to pay another employee overtime, Defendant Doug Quinn did not change how Defendants were paying Plaintiff.

<u>Recordkeeping violations</u>

48.    When they changed her pay rate after April 9, 2011, Defendants failed to provide Plaintiff with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 at any point in her employment.

49.    Defendants did not provide Plaintiff with an accurate wage statement under N.Y. Lab. Law § 195.3 with any wage payment.

Unpaid overtime

    50.    Because no mutual understanding existed between Defendants and Plaintiff that her compensation included overtime premium pay and because her hours did not meaningfully fluctuate during her employment, her effective hourly rate is calculated by dividing her weekly compensation by 40 hours.

    51.    The following chart shows Plaintiff's effective hourly and overtime rates and the weekly overtime hours worked for the past six years:

|  | Weekly Rate | Effective Regular Rate | Overtime Rate | Average Hours Worked | Weekly Overtime Hours |
|---|---|---|---|---|---|
| 01.01.2015-12.31.2015 | $1,000.00 | $25.00[2] | $37.50[3] | 55 | 15 |
| 01.01.2016-12.31.2016 | $1,000.00 | $25.00 | $37.50 | 55 | 15 |
| 01.01.2017-12.31.2017 | $1,000.00 | $25.00 | $37.50 | 55 | 15.5 |
| 01.01.2018-09.04.2018 | $1,000.00 | $25.00 | $37.50 | 55 | 15 |
| 09.05.2018-12.31.2018 | $800.00 | $20.00 | $30.00 | 55 | 15 |
| 01.01.2019-12.31.2019 | $800.00 | $20.00 | $30.00 | 43.75 | 3.75 |
| 01.01.2020-03.12.2020 | $800.00 | $20.00 | $30.00 | 43.75 | 3.75 |

    52.    The following chart shows how much Defendants owe Plaintiff in overtime, liquidated damages and pre-judgment interest at 9.0% *per annum*. These calculations are

---

[2] $1,000.00/40 hours = $25.00.
[3] $25.00 x 1.5 = $37.50.

based on the conservative assumption she worked her average 43.75 and 52.5 hour-

schedule for only 40 weeks per year[4]:

| | Weekly Overtime Hours | Overtime Rate | Weeks Worked | Owed Overtime | Liquidated Damages | Pre-Judgment Interest | Total |
|---|---|---|---|---|---|---|---|
| 01.01.2015-12.31.2015 | 12.5 | $37.50 | 40 | $22,500.00[5] | $22,500.00 | $14,175.00[6] | $59,175.00 |
| 01.01.2016-12.31.2016 | 12.5 | $37.50 | 40 | $22,500.00 | $22,500.00 | $12,150.00 | $57,150.00 |
| 01.01.2017-12.31.2017 | 12.5 | $37.50 | 40 | $22,500.00 | $16,875.00 | $10,125.00 | $55,125.00 |
| 01.01.2018-09.04.2018 | 12.5 | $37.50 | 30 | $16,875.00 | $7,200.00 | $6,075.00 | $39,825.00 |
| 09.05.2018-12.31.2018 | 12.5 | $30.00 | 16 | $7,200.00 | $4,500.00 | $1,944.00 | $16,344.00 |
| 01.01.2019-12.31.2019 | 3.75 | $30.00 | 40 | $4,500.00 | $1,125.00 | $810.00 | $9,810.00 |
| 01.01.2020-03.12.2020 | 3.75 | $30.00 | 10 | $1,125.00 | $22,500.00 | $101.25 | $2,351.25 |
| TOTALS: | | | | $97,200.00 | $97,200.00 | $45,380.25 | $239,780.25 |

FIRST CAUSE OF ACTION

FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA

53.     Plaintiff repeats every preceding allegation as if fully set forth herein.

54.     Defendants are "employers" within the meaning of the FLSA.

55.     Defendants were required to pay Plaintiff no less than one and 1.5 times the

regular rate at which she was paid for all hours worked in excess of 40 hours in a workweek

under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq.,

including 29 U.S.C. §§ 207(a)(1) and 215(a).

---

[4] Plaintiff is not conceding that she worked these hours only 40 weeks per year. These calculations are merely to show a conservative calculation of her damages.
[5] 15 hours x $37.50 overtime hourly rate x 40 weeks = $22,500.00 unpaid overtime in 2015
[6] $22,500.00 x 9.0% x 7 = $14,175.00 in pre-judgment interest

56.     At all relevant times, Defendants had a policy and practice of not paying overtime at the applicable overtime rate to Plaintiff for the hours worked in excess of 40 hours per workweek.

57.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

58.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff.

59.     Defendants have failed to make, keep and preserve records with respect to Plaintiff sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

60.     In failing to compensate Plaintiff for all compensable hours worked, Defendants violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

<u>SECOND CAUSE OF ACTION</u>
UNPAID OVERTIME UNDER THE NEW YORK LABOR LAW

61.     Plaintiff repeats every preceding allegation as if fully set forth herein.

62.     At all relevant times, Plaintiff was employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

63.     Defendants are "employers" within the meaning of the Labor Law.

64.     Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiff 1.5 times her regular rate of pay for all hours she worked in excess of 40.

65.     Defendants failed to pay Plaintiff overtime premium pay for any hour she worked above 40 in a week, violating the Labor Law. 12 N.Y.C.R.R. § 142-2.2.

66.     Defendants willfully violated Plaintiff's rights by failing to pay her overtime compensation at rates not less than 1.5 times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, violating the New York Labor Law and its regulations.

<u>THIRD CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW

67.     Plaintiff repeats every preceding allegation as if fully set forth herein.

68.     Defendants have willfully failed to supply Plaintiff the required statement with every payment of wages, violating Labor Law § 195.3.

69.     Due to Defendants' violations of N.Y. Lab Law § 195.3, Plaintiff is entitled to recover from Defendants $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

<u>FOURTH CAUSE OF ACTION</u>
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW

70.     Plaintiff repeats every preceding allegation as if fully set forth herein.

71.     Defendants changed Plaintiff's wage rate after April 9, 2011 but never provided her with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1.

72.     Defendants have willfully failed to supply Plaintiff with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1(a) at any time during her employment.

73.     Due to Defendants' violations of Labor Law § 195.1, Plaintiff is entitled to recover from them $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. New York. Lab. Law § 198(1)-b (2016).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under the Labor Law;

b.      An injunction against Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.      A referral to the New York Department of Labor to ensure Defendants satisfy any outstanding payroll obligations as Plaintiff's employer;

d.      An award of unpaid overtime and liquidated damages under the FLSA and Labor Law;

e.      An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

f.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

g.      An award of statutory penalties, including liquidated damages, under the Labor Law;

h.      An award of liquidated damages as a result of Defendants' willful FLSA violations;

i.      An award of prejudgment and post-judgment interest;

j.      An award of at least $239,780.25;

-11-

k.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the First Amended Complaint raises for which the applicable statues provide for a trial by jury.

Dated: New York, New York
       June 14, 2021

LIPSKY LOWE LLP

s/ Douglas B. Lipsky
Douglas B. Lipsky
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
milana@lipskylowe.com
*Attorneys for Plaintiff*